**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **MISTY M.,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. EA-25-619** |
| **COMMISSIONER OF SOCIAL SECURITY,** | * | |
| | * | |
| **Defendant.** | | |

**MEMORANDUM OPINION**

On February 25, 2025, Plaintiff Misty M. petitioned this Court to review the final

decision of the Social Security Administration (SSA or Commissioner) denying her claim for

benefits.  ECF No. 1.  This case was referred to a United States Magistrate Judge with the

parties' consent.[1]  ECF Nos. 3–5; 28 U.S.C. § 636; Local Rule 301.4 (D. Md. Dec. 1, 2025).

Pending before the Court is Plaintiff's appeal, which is fully briefed.[2]  ECF Nos. 11, 14–15.  No

hearing is necessary.  Local Rule 105.6.  This Court must uphold the decision of the SSA if it is

supported by substantial evidence and if the SSA employed proper legal standards.  42 U.S.C. §§

405(g), 1383(c)(3); *Craig* v. *Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Under that standard, and

for the reasons set forth below, the Commissioner's decision is reversed, and the case is

remanded for further proceedings consistent with this Memorandum Opinion.

**I.      BACKGROUND**

**A.      Procedural History**

In 2019, Plaintiff filed an application for Disability Insurance Benefits under Title II of

---

[1]  This case was reassigned to the undersigned on January 8, 2026.

[2]  Although the statement of the case in the Commissioner's brief appears to refer to a different matter, the undersigned has independently reviewed the facts of this case and finds that this error has no effect on the outcome or substance of this opinion.  ECF No. 14 at 2–3.

the Social Security Act (the Act), 42 U.S.C. § 401 *et seq.*, alleging a disability onset date of November 5, 2018.[3]  ECF No. 8-1 at 195; *see also id.* at 73–74.[4]  Plaintiff claimed that she was disabled within the meaning of the Act because she is unable to work due to chronic headaches, migraines, front temporal lobe seizures, hearing loss, tinnitus, light sensitivity, loss of depth perception, short-term memory loss, noise sensitivity, and complex post-traumatic stress disorder.  ECF No. 8-1 at 73–74.  The SSA initially denied Plaintiff's application for benefits on February 20, 2020.  *Id.* at 87, 117–119.  Plaintiff sought reconsideration, and the SSA affirmed its initial determination on June 11, 2021.  *Id.* at 112, 122–123.  Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on February 7, 2022.  *Id.* at 45, 129.  On April 8, 2022, the ALJ rendered a decision in which he found that Plaintiff was not disabled within the meaning of the Act (2022 ALJ Decision).  *Id.* at 18–39.  Plaintiff requested further review, which the Appeals Council denied on December 20, 2022.[5]  *Id.* at 7–9, 13–14.

On February 21, 2023, Plaintiff filed suit in the United States District Court for the District of Maryland seeking review of the 2022 ALJ Decision.  ECF No. 8-2 at 91–94; ECF No. 1 (*Misty M.* v. *Kijakazi*, Civil Action No. CDA-23-469).  On August 28, 2023, the Court granted the SSA's consent motion to remand the case for further administrative proceedings pursuant to 42 U.S.C. § 405(g).  ECF Nos. 13–14 (*Misty M.* v. *Kijakazi*, Civil Action No. CDA-23-469).  On November 3, 2023, the Appeals Council remanded the case with specific instructions.  ECF No.

---

[3]  "Title II 'provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need.'"  *Smith* v. *Berryhill*, 587 U.S. 471, 475 (2019) (quoting *Bowen* v. *Galbreath*, 485 U.S. 74, 75 (1988)).

[4]  Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files (CM/ECF) system printed at the top of the cited document.

[5]  Upon denial of Appeals Council review, the 2022 ALJ Decision became a final, reviewable decision of the SSA.  *Sims* v. *Apfel*, 530 U.S. 103, 106-107 (2000); 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(a).

8-2 at 99–101; *see also* I.C., *infra*.  On December 26, 2024, a second ALJ found that Plaintiff was not disabled within the meaning of the Act during the relevant timeframe (2024 ALJ Decision).  ECF No. 8-2 at 8–25.  On February 25, 2025, Plaintiff again petitioned this Court to review the SSA's findings.[6]  ECF No. 1.

**B.      Statutory Framework**

The Act authorizes Disability Insurance Benefit payments to every insured individual who "is under a disability."  *Cleveland* v. *Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801 (1999) (quoting 42 U.S.C. § 423(a)(1)); *see also Shue* v. *O'Malley*, No. 23-1795, 2024 WL 2827936, at *3 (4th Cir. June 4, 2024).  The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).

Federal regulations require the ALJ to evaluate a claimant's disability claim using a five-step sequential evaluation process.  20 C.F.R. § 404.1520.  Through this process, an ALJ evaluates, in order, "whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy."  *Hancock* v. *Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).  "The applicant bears the burden of production and proof during the first four steps of the inquiry."  *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  At the fifth step, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can

---

[6] When Plaintiff did not file exceptions and the Appeals Council did not again assume jurisdiction of the case, the 2024 ALJ Decision became the final, reviewable decision of the SSA.  42 U.S.C. § 405(g); 20 C.F.R. § 404.984(d).

perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Mascio* v. *Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (internal quotation marks and citation omitted).

If the claimant satisfies step 3, there is "an automatic finding of disability," which "relieves the decision maker from proceeding to steps 4 and 5." *Patterson* v. *Commissioner of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). If the claimant does not carry their burden at the third step of the sequential evaluation, then the ALJ must assess relevant evidence and make a finding regarding the claimant's residual functional capacity, which he then uses at the fourth and fifth steps of the disability assessment. 20 C.F.R. § 404.1520(e); *Monroe* v. *Colvin*, 826 F.3d 176, 179 (4th Cir. 2016). Residual functional capacity is defined as "the most [the claimant] can still do despite your [physical and mental] limitations." 20 C.F.R. § 404.1545. The residual functional capacity assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Mascio*, 780 F.3d at 636 (quoting Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims (SSR 96-8p), 61 Fed. Reg. 34,474, 34,475 (July 2, 1996)). "Only after such a function-by-function analysis may an ALJ express [residual functional capacity] 'in terms of the exertional levels of work.'" *Monroe*, 826 F.3d at 187 (quoting *Mascio*, 780 F.3d at 636). The ALJ then uses its residual functional capacity determination at the fourth and fifth steps of the disability assessment. 20 C.F.R. § 404.1520(e); *Monroe*, 826 F.3d at 179.

### C.    The Appeals Council's Order

In accordance with this Court's remand, the Appeals Council vacated the agency's final decision and remanded the case to the Commissioner for further administrative proceedings. ECF No. 8-2 at 99. The Appeals Council's Order noted that the initial decision had failed to

"adequately evaluate the claimant's migraine headache symptoms," specifically, "front lobe seizures, hearing loss, tinnitus, light sensitivity, loss of depth perception, short-term memory loss, noise sensitivity, and mood changes." *Id.* It further noted that the decision failed to consider Family Nurse Practitioner-Board Certified (FNP-BC) Allison Koutsandreas's medical opinion that Plaintiff "derived no benefit from topiramate, gabapentin, Emgality, Aimovig, Ajovy or Botox," and did not acknowledge that Plaintiff could only perform activities of daily living on "good days" and with assistance at times. *Id.* at 99–100. The Appeals Council's Order included the following instructions at issue in the instant appeal:

> Further evaluate the claimant's alleged symptoms secondary to migraine headaches, . . ., and provide rationale in accordance with . . . 20 CFR 404.1529[ ].
>
> Give particular consideration to the types of treatment the claimant pursued, reasons for declining treatment such as medication side effects, and her response to treatment (Social Security Ruling 16-3p).
>
> Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Ruling 85-16 and 96-8p).[7]

*Id.* at 101 (bullet-points removed, line break added).

### D.     The 2024 ALJ Decision

At step one of the five-step sequential disability evaluation, the 2024 ALJ decision found that Plaintiff had not "engage[d] in substantial gainful activity during the period from her alleged

---

[7] The Appeals Council's Order also addressed use of a vocational expert, if warranted. ECF No. 8-1 at 101. Plaintiff's only argument regarding this additional instruction is that "the [vocational expert] was not properly directed to assume established restrictions, as the Appeal Council instructed." ECF Nos. 8-2 at 101; 11 at 17. The Appeals Council's Order does not, however, instruct the ALJ to direct the vocational expert to "assume established restrictions." Accordingly, the undersigned declines to address this facet of Plaintiff's Appeals Council argument on appeal.

onset date of November 5, 2018, through her date last insured of December 31, 2023."[8]  ECF No.

8-2 at 13.  At step two, the ALJ found that Plaintiff suffered from the severe impairments of

"bipolar with major depressive features, generalized anxiety disorder, post-traumatic stress

disorder (PTSD), personality disorder, migraines, vascular headaches, sensorineural hearing loss,

irritable bowel syndrome, obesity[,] and disorders of the cervical spine."  *Id.* at 14.  At step three,

he determined that Plaintiff "did not have an impairment or combination of impairments that met

or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P,

Appendix 1."[9]  *Id.*  In reaching this conclusion, the ALJ relied on medical records from a single

hospital stay more than a year before the alleged onset date as evidence that "[t]he claimant had

stable neurological findings.  She did not require inpatient treatment for her migraines."  *Id.* at

15; ECF No. 8-1 at 541–580.

Before continuing to the fourth step, the ALJ determined that Plaintiff retained the

residual functional capacity to:

> perform light work as defined in 20 CFR 404.1567(b) except the claimant could not climb ladders, ropes, and scaffolds, but she could perform other postural movements on an occasional basis. The claimant was limited to frequent fingering, grasping, handling and reaching.
>
> The claimant could not work in environments that would have subjected her to concentrated exposure to respiratory irritants and extreme temperatures and humidity. The claimant could not work in

---

[8] "[D]ate last insured" refers to "the last day of the quarter a claimant[] meets insured status for disability or blindness."  U.S. Soc. Sec. Admin., DI 25501.320, Program Operations Manual System (2015); *see also Delk* v. *Colvin*, 675 Fed. Appx. 281, 282 (4th Cir. 2017) (explaining that the Disability Insurance Benefit program provides benefits to individuals "who have contributed to the program while employed").

[9] Appendix 1 to 20 C.F.R. Part 404, Subpart P provides a listing of impairments.  Within Appendix 1, listing 11.02 (epilepsy) "is the most closely analogous listed impairment for an MDI [Medically Determinable Impairment] of a primary headache disorder."  Social Security Ruling 19-4p, Titles II and XVI: Evaluating Cases Involving Primary Headache Disorders, 84 Fed. Reg. 44,667-01, 44,671 (Aug. 26, 2019) (alteration added).  Under this ruling, migraine headaches are one kind of primary headache disorder.  *Id.* at 44,668.

brightly lit and noisy working conditions, but office level noise and lighting (moderate level) were okay. The claimant could not work around vibrations and hazards such as moving dangerous machinery and unprotected heights.

The claimant was limited to simple tasks but could have applied commonsense understanding to carry out detailed but uninvolved written or oral instructions and could deal with problems involving a few concrete variables in or from standardized situations consistent with work at [skilled vocational preparation] level 2.[10]

The claimant could not do fast-paced tasks such as assembly line jobs involving production quotas, but she could work at a consistent pace throughout the workday but not at a production rate pace where each task must have been completed within a strict time deadline.

Also, the claimant was limited to occasional interaction with the public, coworkers, and supervisors, but she was able to adapt to and manage a low stress work environment defined as one that required only occasional decision making and occasional changes in the work setting.

ECF No. 8-2 at 16–17 (bold removed; alteration, footnote, and line breaks added).[11]

At the fourth step, the ALJ determined that Plaintiff "was unable to perform any past relevant work," noting that she was "limited to unskilled work, and her past work is skilled." *Id.* at 23. Lastly, at the fifth step, the ALJ determined that considering Plaintiff's "age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [she] could have performed," and therefore Plaintiff was not "under a disability" as defined in the Act, and the SSA properly denied his application for benefits. *Id.* at 23–24.

---

[10] Skilled vocational preparation is a rating used by the Social Security Administration to determine the skill level of an individual's past relevant work. An SVP rating of 1 or 2 corresponds to an "unskilled" occupation. U.S. Soc. Sec. Admin., DI 25015.015, Program Operations Manual System (2024).

[11] The residual functional capacity determination of the 2024 ALJ Decision was different from the 2022 ALJ Decision, which found, among other things, that Plaintiff could perform "medium work." ECF No. 8-1 at 28.

7

## II.    DISCUSSION

On appeal, Plaintiff argues that the ALJ failed to (1) comply with the Appeals Council's order to further evaluate Plaintiff's migraines, and (2) support his residual functional capacity determination with substantial evidence, specifically by explaining his consideration of FNP-BC Koutsandreas's medical opinion.  ECF No. 11 at 3.  The Commissioner argues the opposite. ECF No. 14 at 6–12.  The applicable standard of review and each of these arguments is addressed in turn below.

### A.    Standard of Review

The scope of judicial review of the SSA's disability determination is "circumscribed." *Britt* v. *Saul*, 860 Fed. Appx. 256, 259 (4th Cir. 2021) (citing 42 U.S.C. § 405(g)).  The Court must affirm the decision "so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence."  *Id.*; *accord Mascio*, 780 F.3d at 634; *Coffman* v. *Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  Factual findings supported by substantial evidence "shall be conclusive."  42 U.S.C. § 405(g); *see also Hays* v. *Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if [the] decision is supported by substantial evidence.").

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding."  *Biestek* v. *Berryhill*, 587 U.S. 97, 102 (2019).  Under this standard of review, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* at 103 (quoting *Consolidated Edison Co.* v. *NLRB*, 305 U.S. 197, 229 (1938)); *see also Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) ("Substantial evidence . . . is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.").  It is "more than

a mere scintilla . . . [and] somewhat less than a preponderance." *Laws*, 368 F.2d at 642. The "threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.

In conducting the substantial evidence inquiry, this Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co.* v. *Akers*, 131 F.3d 438, 439-440 (4th Cir. 1997). Although an ALJ's decision must be sufficiently detailed to allow for meaningful judicial review, an "elaborate or even sophisticated" explanation is not required. *Mascio*, 780 F.3d at 636-637; *T-Mobile S., LLC* v. *City of Roswell*, 574 U.S. 293, 302 (2015). Rather, an administrative decision's reasoning need only be "reasonably discernible." *Garland* v. *Ming Dai*, 593 U.S. 357, 369 (2021). "Meaningful review is frustrated—and remand necessary—only where [the court is] unable to fathom the [ALJ's] rationale in relation to evidence in the record." *Britt*, 860 Fed. Appx. at 262 (internal quotation marks and citation omitted).

**B.    Appeals Council Order**

Federal regulations provide that an ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b). Notwithstanding this requirement, "[f]ederal courts are split on the issue of whether an ALJ's failure to comply with an Appeals Council remand order may serve as an independent ground for reversal," and the United States Court of Appeals for the Fourth Circuit "has not definitively addressed the issue." *Nicholas* v. *Kijakazi*, Case No. 3:20-cv-00531, 2021 WL 3878291, at *10 (S.D.W. Va. Aug. 12, 2021) (collecting cases). Several decisions of this Court have concluded that such a failure requires remand. *E.g.*, *Christopher M.* v. *Bisignano*, Civil Action No. DRM-24-2922, 2026 WL 352985, at *4 (D. Md. Feb. 9, 2026) ("To be sure, 20 C.F.R. § 404.977(b) requires that ALJs comply with a remand order from the Appeals Council, and failing to do so constitutes a reversible error."); *Sue S.* v.

9

*Bisignano*, Civil Action No. DRM-24-2484, 2025 WL 2734091, at *3 (D. Md. Sep. 24, 2025) (remanding when an ALJ "failed to provide further analysis on Plaintiff's fibromyalgia" diagnosis, as directed by the Appeals Council); *Salvetti* v. *Astrue*, Civil Action No. WGC-09-2576, 2011 WL 6739578, at *11 (D. Md. Dec. 21, 2011) ("A remand is warranted since the ALJ failed to follow the instructions of the Appeals Council."). Nevertheless, as Plaintiff notes (ECF No. 11 at 14–15), there are decisions to the contrary, *e.g.*, *Yonek* v. *Astrue*, Civil Action No. TMD 09-2905, 2011 WL 1231154, at *2 (D. Md. Mar. 28, 2011) (noting that "the failure of an ALJ to follow the precise dictates of an Order of Remand from the Appeals Council does not automatically warrant a remand"). In light of the plain language of the application regulation and the most recent interpretive case law, the undersigned concludes that failure to "take any action that is ordered by the Appeals Council" calls for remand. 20 C.F.R. § 404.977(b).

Accordingly, remand is warranted here if the ALJ failed to (1) "further consider[] the claimant's migraine headaches" and associated symptoms, (2) "[g]ive particular consideration to the types of treatment the claimant pursued, reasons for declining treatment . . . , and her response to treatment," or (3) further consider "the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations," as instructed by the Appeals Council. ECF No. 8-2 at 99–101; *see also* I.C., *supra*. The 2024 ALJ Decision fails on all three counts.

First, the decision does not "adequately evaluate the claimant's migraine headache symptoms," an issue the Appeals Council remanded to the ALJ "for resolution." *Id.* at 99. In *Sue S.*, the Appeals Council ordered the ALJ to further "analyze the effects of claimant's fibromyalgia as distinct from the claimant's [other medical issues]." 2025 WL 2734091, at *3. When the ALJ acknowledged "at least six or more fibromyalgia symptoms, signs, or co-occurring conditions," but failed to analyze them in the connection with Plaintiff's fibromyalgia,

10

the Court found that the ALJ had failed to comply with the Appeals Council's Order. *Id.*  Here, the Appeals Council's Order specifically lists eight "alleged symptoms secondary to migraine headaches."  ECF No. 8-2 at 99, 101.  The 2024 ALJ Decision does not meaningfully evaluate these symptoms in connection with Plaintiff's migraines beyond mere acknowledgment of their existence. *Id.* at 13–25.  Instead, the decision makes broad statements about "stable findings" (*id.* at 18), "intact neurological findings" (*id.*), and "intact memory" (*id.* at 19, 21).  As a result, the ALJ decision fails to comply with the Appeals Council order.

Similarly, the 2024 ALJ Decision does not adequately consider types of treatment pursued, reasons for declining treatment, and responses to treatment.  While the decision discusses that Plaintiff "had occipital nerve blocks performed, which she alleged only helped minimally," was prescribed and given various headache medications, and "reported an improvement in her headaches" at one point after undergoing injections for migraines (*id.* at 18–19), it does not "[g]ive particular consideration" to such issues as required by the Appeals Council (*id.* at 101).  It does not even mention much of the treatment evidence identified in the 2022 ALJ Decision, including that "Depakote dosage was decreased due to upset stomach" (ECF No. 8-1 at 31), Emgality injections were stopped "due to no changes with her pattern of headaches" (*id.*), and there was "no evidence that she followed through with th[e] recommendation [for a hearing aid evaluation]," (*id.* at 32).  The 2024 ALJ Decision simply does not adequately address the issue as ordered by the Appeals Council.

Finally, for reasons that follow, *see* II.C.-D.*, infra*, the 2024 ALJ Decision fails to "provide appropriate rationale with specific references to evidence of record in support of the assessed limitations" in its reconsideration of Plaintiff's residual functional capacity.  ECF No. 8-2 at 101.

### C.    Subjective Statements

When evaluating a claimant's subjective symptoms, an ALJ is required to use the two-step framework set forth in 20 C.F.R. § 404.1529 and Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims (SSR 16-3p), 81 Fed. Reg. 14,166-01 (Mar. 16, 2016). *Arakas* v. *Commissioner, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020). Under this framework, the ALJ must first "determine whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." *Id*. (quoting 20 C.F.R. § 404.1529(b); SSR 16-3p, 81 Fed. Reg. at 14,167). Second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p, 81 Fed. Reg. at 14,167; *see also Arakas*, 983 F.3d at 95; 20 C.F.R. § 404.1529(c). Importantly, "[a]t this step, objective evidence is *not* required to find the claimant disabled." *Arakas*, 983 F.3d at 95 (emphasis in original).

Consideration of the intensity, persistence, and limiting effects of symptoms requires the ALJ to examine the entire record, including the objective medical evidence; the claimant's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the case record. 20 C.F.R. § 404.1529(c); SSR 16-3p, 81 Fed. Reg. at 14,168-14,170. The ALJ may also consider factors such as daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; and treatment, other than medication, received for relief of pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 81 Fed. Reg. at 14,169-14,170.

A claimant is "entitled to rely exclusively on subjective evidence" to prove the severity and extent of their symptoms. *Arakas*, 983 F.3d at 96 (quoting *Hines* v. *Barnhart*, 453 F.3d 559, 563, 565 (4th Cir. 2006)). Thus, an ALJ commits "reversible error by improperly increasing Plaintiff's burden of proof by 'effectively requiring' [their] subjective symptoms to be 'supported by objective evidence.'" *Christina W.* v. *O'Malley*, Civil Action No. CDA-23-1325, 2024 WL 3819343, at *4 (D. Md. Aug. 14, 2024) (quoting *Arakas*, 983 F.3d at 96); *see also Stoker* v. *Saul*, 833 Fed. Appx. 383, 386 (4th Cir. 2020) (finding that "the ALJ's determination that [the claimant's] assertions about the severity and limiting effects of his pain were less credible merely because no objective medical evidence supported them, was improper").

In *Willis F.* v. *Kijakazi*, this Court found that the ALJ's opinion did not provide the requisite bridge between the evidence and the ALJ's conclusion because the ALJ did not explain how the objective medical evidence "either undermine[d] or [was] entitled to more weight than Plaintiff's continued reports of pain." Civil Action No. AAQ-23-318, 2023 WL 8437229, at *3 (D. Md. Dec. 5, 2023); *accord Candace W.* v. *Dudek*, Civil Action No. ADC-24-2124, 2025 WL 885998, at *4 (D. Md. Mar. 21, 2025); *Kevin T.* v. *O'Malley*, Civil Action No. CDA-23-312, 2023 WL 8993664, at *4 (D. Md. Dec. 28, 2023); *Towanna G.* v. *Kijakazi*, Civil Action No. BAH-21-1711, 2022 WL 4017417, at *4 (D. Md. Sept. 2, 2022).

Here, the ALJ's decision makes the same error. At step one of the framework, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." ECF No. 8-2 at 17. At the second step, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* In assessing Plaintiff's symptoms related to these subjective statements, the ALJ cited the "objective medical evidence" in the record. *Id.* at 17–20. He did not, however, "build

13

an accurate and logical bridge" between the evidence and his conclusion.  *Stoker*, 833 Fed.

Appx. at 386 (quoting *Brown* v. *Commissioner Soc. Sec. Admin.*, 873 F.3d 251, 269 (4th Cir.

2017)).  The pertinent section of the decision included only vague descriptions of the "intensity,

persistence and limiting effects of" Plaintiff's specific migraine symptoms with occasional

references to exhibits in the record and infrequent mention of specific page numbers.  ECF No.

8-2 at 17–20.  The only reasons offered for discounting the plaintiff's reported symptoms are

nonspecific comments about "stable" or "intact" medical findings with no further explanation.

*Id.*  For example, the ALJ decision mentions that "[i]n February 2023, the claimant had a stable

neurological examination."  *Id.* at 19.  The first page of the cited source indicates that Plaintiff

"[f]eels all the nerves in her body are overstimulated and in pain," that she had a headache every

day for the previous month, and that her migraines were severe enough that "8 or more times per

month [she] must lie down all day."  *Id.* at 315.  While the ALJ may have found evidence in the

rest of the document explaining why those subjective symptoms were given less weight than the

"stable examination" cited, that evidence is neither identified nor discussed in the decision.  As

in *Willis F.*, this decision offers no explanation as to why Plaintiff's allegations of pain and

limitations were entitled to less weight than other evidence in the record.  *Towanna G.*, 2022 WL

4017417, at *4 (reversing and remanding where the ALJ "failed to effectively explain *how* the

objective medical evidence contradicts Plaintiff's subjective complaints") (emphasis in original).

For these reasons, the ALJ's analysis of Plaintiff's subjective statements is not supported by

substantial evidence, which precludes meaningful review.

> **D.     Medical Opinions**

 An ALJ "must follow certain procedures when assessing the weight to which medical

opinions are entitled" and "articulate . . . how persuasive [the ALJ] finds each medical opinion."

*Adrianna S.* v. *Commissioner, Soc. Sec. Admin.*, Civil Action No. SAG-20-3136, 2022 WL

112034, at *1 (D. Md. Jan. 12, 2022) (citing 20 C.F.R. §§ 404.1520c, 404.1520c(b)).  The

implementing regulations identify a series of factors that must be considered when assessing

medical opinions.  20 C.F.R. § 404.1520c(c).  Among those factors, "[s]upportability and

consistency are the most important factors when considering the persuasiveness of medical

opinions."  *Adrianna S.*, 2022 WL 112034, at *1; *see also* 20 C.F.R. § 404.1520c(b)(2).

"Supportability generally refers to 'the objective medical evidence and supporting explanations

provided by a medical source.'"  *Adrianna S.*, 2022 WL 112034, at *1 (quoting 20 C.F.R.

§ 404.1520c(c)(1)).  "Strictly speaking, 'supportability' concerns an opinion's reference to

diagnostic techniques, data collection procedures/analysis, and other objective medical

evidence."  *Carlos F.* v. *Kijakazi*, Civil Action No. BAH-22-2049, 2023 WL 3293086, at *3 (D.

Md. May 5, 2023) (internal quotation marks and citation omitted) (quoting 20 C.F.R.

§ 404.1520c(c)(1)).  "In assessing consistency, the ALJ looks to the degree of cohesion between

the medical opinion and 'the evidence from other medical sources and nonmedical sources in the

claim.'"  *Andrew P.* v. *O'Malley*, Civil Action No. CDA-23-2443, 2024 WL 4288063, at *3 (D.

Md. Sept. 25, 2024) (quoting *Adrianna S.*, 2022 WL 112034, at *1); *see also* 20 C.F.R.

§ 404.1520c(c)(2).  "Supportability and consistency 'must be considered independently.'"

*Antwoin W.* v. *Dudek*, Civil Action No. CDA-24-75, 2025 WL 949410, at *3 (D. Md. Mar. 28,

2025) (quoting *Carlos F.*, 2023 WL 3293086, at *3).

Remand is warranted where an ALJ fails to properly consider the supportability and

consistency of a medical opinion.  *E.g.*, *Lauren P.* v. *Dudek*, Civil Action No. SAG-24-0480,

2025 WL 754522, at *5 (D. Md. Mar. 10, 2025) (collecting cases).  Accordingly, an ALJ must

"explain how [they] considered the supportability and consistency factors for a medical source's

medical opinions."  20 C.F.R. § 404.1520c(b)(2).  This explanation must include reference to

specific evidence in the record.  *Shelley C.* v. *Commissioner of Soc. Sec. Admin.*, 61 F.4th 341,

358 (4th Cir. 2023) ("where an ALJ fails to specify which specific objective evidence supports his conclusion, that analysis is incomplete and precludes meaningful review") (internal citation and quotation marks omitted).  Importantly, for "the ALJ to have adequately discussed the supportability of . . . opinions, the ALJ needed to evaluate what the [physicians] said they based their opinion on—not simply how their opinions compared to the record evidence as a whole, which only goes to . . . consistency." *Carlos F.*, 2023 WL 3293086, at \*3 (quoting *Mary W.* v. *Commissioner of Soc. Sec.*, Civ. No. 20-5523, 2022 WL 202764, at \*10 (S.D. Ohio Jan. 24, 2022)) (alteration in original).

Here, the ALJ found that "claimant's activities of daily living, clinical findings from treating and examining sources, progress notes and response to conservative treatment do not support limitations that are greater than [light work]." ECF No. 8-2 at 21.  FNP-BC Koutsandreas is the only medical opinion provider the Appeals Council order mentions by name. *Id.* at 99.  After acknowledging FNP-BC Koutsandreas's opinion, the ALJ dismissed it as "not persuasive." *Id.* at 22.  His supportability analysis is limited to a single sentence that states, "As to the supportability, this is a checklist style opinion." *Id.*  Regarding consistency, the ALJ concluded that "[t]he evidence shows that the claimant's migraines were managed with medication.  She had normal neurological examinations, and she did not require repeated emergency visits for pain or headaches.  Progress notes showed stable findings." *Id.*  Similar to *Shelley C.*, the 2024 ALJ Decision makes no further reference to evidence in the record. 61 F.4th at 358.  As in *Carlos F.*, the ALJ decision here does not discuss what FNP-BC Koutsandreas "based [her] opinion on." 2023 WL 3293086, at \*3.  In short, the ALJ's failure to consistently identify supporting evidence for his conclusions precludes meaningful review by this Court.

## III.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion pursuant to sentence four of 42 U.S.C. § 405(g).  In remanding for further explanation and analysis, the Court offers no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.  A separate Order follows.

Date:  March 16, 2026

_____/s/_____
Erin Aslan
United States Magistrate Judge